FILED

Hudena James
23729 Bouquet Canyon Place
Moreno Valley, California 92557
(909)732 2450
Hudena@aol.com

2023 MAY 15  AM 11: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

FEE PAID

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HUDENA JAMES,

                 Plaintiff,

vs.

THE MONEY SOURCE, A
BUSINESS ENTITY, FORM
UNKNOWN; SERVBANK, A
BUSINESS ENTITY, FORM
UNKNOWN, STARVOS
PAPASTAVROU, DARIUS
MIRSHAHZADEH, ALI
VAFARI , DOES 1 TO 20,
INCLUSIVE

                 Defendants

Case No.: EDCV23-00870-SSS(SHKx)

BREACH OF IMPLIED
COVENANT OF GOOD FAITH
AND FAIR DEALING,

BREACH OF FIDUCIARY
DUTY OF TRUST,

RACIAL DISCRIMINATION
IN CONTRACT TERMS
PURSUANT TO 1866 CIVIL
RIGHTS ACT (42 U.S.C. §1981),
UNRUH CIVIL RIGHTS ACT
(CIVIL CODE 51), FAILURE
TO CANCEL PMI,
DECEPTIVE STATEMENTS
REGARDING PMI
CANCELLATION, FAILURE

1

**TO TRAIN, SUPERVISE, AND DISCIPLINE AS TO EMPLOYEES REGARDING MULTIPLE PAYMENTS IN ONE MONTH,**

**CONSUMER FINANCIAL PROTECTION ACT ("CFPA"), REAL ESTATE SETTLEMENT PROCEDURES ACT, RESPA MORTGAGE SERVICING RULE,**

**HOMEOWNERS PROTECTION ACT OF 1998,**

# I JURSIDICTION

**DISCRIMINATION UNDER 42 U.S.C.A. § 1981**

This court has jurisdiction under 28 U.S.C § 1331 and 28 U.S.C§ 1434. Federal question jurisdiction arises pursuant to 42 U.S.C § 1391

**JURISDICTION AND VENUE**

The Court has subject-matter jurisdiction over this action because it is brought under federal consumer financial law,

2

12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an injured Plaintiff.

This Court has jurisdiction over this action pursuant to 28 U.S.C.A. § 1331 and 1343.This Court has pendant and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C.A. § 1367. Declaratory and injunctive relief is authorized by 28 U.S.C.A. §§ 1343(a)(4), 2201, and 2202.

The events giving rise to the claims alleged in this Complaint arose in Moreno Valley, California. Specifically, 23729 Bouquet Canyon place, Moreno Valley, California 92557. Plaintiff mails monthly payment to the Defendant of $2600 a month to the Defendants. Plaintiff mails his mortgage payment to the defendants on a monthly basis at P.O. Box 619063 Dallas, Texas 75261-9063. Plaintiff mails excess amounts each month to cover reducing his principal balance.

3

## II VENUE

Venue is proper pursuant to 28 U S C § because Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because Defendant conducts business in this district, and part of the events giving rise to the claims occurred in this district.

## III PARTIES

1. Plaintiff, Hudena James, resides at 23729 Bouquet Canyon Place, Moreno Valley, California 92557. Plaintiff, Hudena James, age 69, is an African -American male resident of the County of Riverside and State of California.

2. Defendants Starvos Papastavrou is founder of and Chairman of the Money Source. He is located Suite 200, 3138 East Elwood St. Phoenix, Arizona 85034 and either approves or develops the policies that run the Money Source in which Plaintiff has suffered contractual and racial injuries.

4

The Defendant is sued in his individual capacity and in the Title and Position of CEO of The Money Source.

3. Defendant Darius Mirshahzadeh is also CEO of the Money Source. He is located at Suite 200, 3138 East Elwood St. Phoenix, Arizona 85034 and either approves or develops the policies that run the Money Source, that have in turn, injured Plaintiff.

4. Ali Vafari is President of the Money Source and is sued in his capacity as President of the Money Source. He is located at Suite 200, 3138 East Elwood St. Phoenix, Arizona 85034 and

either approves or develops the policies that run the Money Source that have actually injured Plaintiff.

5. The Defendants Money Source Corporate Office and Servbank Corporate Office are both located at Suite 200, 3138 East Elwood St. Phoenix, Arizona 85034

6. Plaintiff mails his mortgage payment to the defendants The Money Source on a monthly basis at Servbank P.O. Box 619063 Dallas, Texas 75261-9063.

5

7. Does 1 to 20, are employees and agents of the

Defendants: The Money Store and Servbank process mortgage

payments on their behalf and collect PMI payments and assess late

fees and collects duplicative telephone mortgage payments and

mailed in mortgage payments and refuses to cancel PMI payments.


## IV STATEMENT OF FACTS IN THE CASE

7. Plaintiff contends that the Defendants and each of them

have breached the implied covenant of good faith and fair dealing

inherent in all contracts formed in the State of California on or

about May 15, 2021 up to and including May, 2023 and are treating

the Plaintiff  in bad faith and racially differently than similarly

situated Whites that make monthly mortgage payments to the

Money Source and/or Servbank in violation of the 1866 Civil Rights

Act( 42 U S C § 1981)  and the Unruh Civil Rights Act of California

( Civil Code 51) when it comes to the enforcement of the terms of

our mortgage loan agreement.

6

8.The particulars are that Defendants in bad faith and contrary to the legislative intent of the State of California in passing the Unruh Civil Rights Act and the intent of the U.S Congress in passing the 1866 Civil Rights Act. The first time was when Plaintiff requested the Defendant, The Money Source (Mortgagee), to remove Mortgage Insurance (PMI) from this mortgage loan number #0031626351 that is the subject of this lawsuit on May 25, 2021.

9. Defendants are currently charging Plaintiff $211.58 for unnecessary mortgage insurance. Plaintiff had his attorneys write Defendant, The Money Source, on May 25, 2001 to remove the mortgage insurance fees because they were unnecessary and duplicative since the equity in my home at 23729 Bouquet Canyon Place, Moreno Valley, California 92557 had more than doubled and could cover any losses due to defaults on the part of the Plaintiff (Mortgager). In other words, Plaintiff 's Home is worth $600,000 ($300,000 covers equity and about $290, 000 is debt to the Defendant the Money Source (Mortgagee). If Plaintiff is unable to pay the

7

monthly mortgage and defaults then the property has enough equity to cover the loss.

10. Secondly, on two separate occasions, the Defendants have charged the Plaintiff two mortgage payments in one month, even after assuring him they wouldn't take a second payment out of his checking account. The Defendants and or their representatives told Plaintiff that they had not received his mortgage payment by mail for the month of January 2022; Plaintiff Hudena James told the Defendant, The Money Store and or their representatives, that he will make the payment over the phone if you don't receive it by January 15, 2022. The money store assured Plaintiff that they would not cash the mailed check if it was received since he made a telephone payment. However, the Defendants cashed both checks for $2600 in the month of January causing Plaintiff Bank Fees.

11. The next time was when Defendants cashed two mortgage payments in one month in November 2022 by double

8

dipping into Plaintiff bank account without permission or consent
and taking out $2600 each time for a second time in the same year.

Again, Plaintiff incurred bank charges for insufficient
funds because they cashed two payments in one month on two
separate occasions in one year.

12. Defendants told Plaintiff on the first check for $2600
that after January 16, 2022, a late payment of $66.53 would be
assessed against him if payment was not received. In order to avoid
that late fee and not jeopardize my good credit, I authorized a
payment by telephone check and gave The Money Source employee
permission to take the unreceived mortgage payment of $2600 out of
my checking account. Plaintiff, specifically asked the Defendant,
The Money Source employee, not to double dip into his checking
account and cash both payments in one month. I said once I paid
over the phone for her not to cash the mailed mortgage check when
it arrived. Defendant assured Plaintiff that she would notate my file
and not cash the second check if it arrived by mail. However, they

9

cashed the telephone check for $2600 and the second check for $2600 received in the mail in the same month of January 2022. I wrote the Defendants about this issue on February 15, 2022 and received no response. It happened a second time in November of 2022 and this time my attorney wrote them about this particular issue on December 8, 2022 and I wrote them again on December 31, 2022 and as usual - there was not a single response.

13. They cashed two checks in one month in January 2022 and they did it a second time in November of 2022. They cashed both the mailed check and the Telephone check in the same month on two different months in the same year of 2022. My complaints about this second mistreatment from Defendants went unheeded and unanswered when my attorneys wrote the Defendants about this particular injustice and thus this lawsuit was initiated.

14. Thirdly, Plaintiff mailed his payments on the first of the month and pursuant to the common law - mailbox rule, acceptance is effective on dispatch, yet Defendant charges Plaintiff a

10

late fee of $66.53 when the payments are not received in their offices

before the 15th of the Month and they blame any delays in receiving

payments on the post offices instead of disorganization within their

company. The Defendants should consider the stamped date on the

mailed envelope and not the date when they received it in their

office. Plaintiff sought to have the one late fee of $66.53 in 6 years

reversed – but to no avail. Request to reverse the late fee by my

attorneys have gone unheeded and unanswered as well and thus this

lawsuit was initiated.

       15.Fourthly, Plaintiff, Hudena James brings this action

against The Money Source under Sections of the duty of care found

in the Consumer Financial Protection Act of 2010 ("CFPA"), 12

U.S.C. §§ 5564 and 5565. The Money Source is one of the largest

mortgage servicers, and one of the largest non-bank mortgage

servicers, in the United States.

16.  Fifthly, The Money Source has repeatedly violated multiple

federal consumer financial laws, causing substantial harm to the

borrower Plaintiff Hudena James whose loans it serviced between May 25, 2021 and May 2023 and is still servicing.

 The Money Source (1) failed to properly credit Plaintiff mortgage payments, charged him unnecessary late fees, debited his checking account twice in a month instead of once a month on two separate occasions in one year and delayed giving him proper credit for payments and then charging him a late fee for payments that were actually timely.

17. Sixthly, The Plaintiff has repeatedly asked the Defendant to reverse the late fee of $66.53 and they have refused. The Defendant was repeatedly told not to cash two checks in one month and the Defendant employee agent promised that a second check would not be cashed since I sent in a telephone check and yet they cashed both payments and improperly took a late fee out of me mailed mortgage payments without my permission or consent twice in one year.

12

18. Seventhly, the Defendants have recently assigned Plaintiff's mortgage payments to Servbank and Servbank is now claiming Plaintiff is behind in two payments when Plaintiff has made all of his payment in a timely fashion. A change in form by the Defendant by substituting a new mortgage payment provider has not caused a change in actions. The Defendant, singularly and cumulatively, continues to operate in a disorganized fashion and continue to not timely credit Plaintiffs Mortgage account as is common in the mortgage industry.

19. Plaintiff will suffer significant negative impacts, including to his finances and credit if the Defendant continues to double dip into Plaintiff's bank account and continues to charge late fees and Defendants may even attempt to foreclose on Plaintiff if the above-mentioned practices continue.

20. In addition to all the above, the Defendant unilaterally and without consulting with Plaintiff took $66.53 out of his mortgage payment for late fees.

21. Plaintiff now incurs $1.85 every month from the U.S. Post Office by buying a Proof of Mailing to show his mortgage payments are mailed on the 1st of the month.

22. The Defendant has no respect for contract law and do what they feel without consideration of the other contracting party to the contract. These acts breached the implied covenant of good faith and fair dealing inherent in all contract and subjects Plaintiff to racially dissimilar treatment when compared with white mortgagors that do business with the Money Source and Servbank.

23. On numerous instances, errors in Defendants systems of record keeping are the contributing cause of these late fees and double dipping into my checking account and are causing it to overdraw because of their breach of duty, negligent, and disorganized business practices in keeping accurate records on mortgage payments and Plaintiff is the one that is suffering

14

from this disorganization and racial insensitivity to the plight of this Plaintiff.

24. Also, Defendants Mishandled Borrowers' Private Mortgage Insurance. Plaintiff was required to purchase Private Mortgage Insurance ("PMI") when they obtain a mortgage but have a down payment of less than 20 percent of the home's price, or when they refinance their mortgage but have less than 20 percent equity in their property.

25. Pursuant to the Homeowners Protection Act ("HPA"), servicers are required to remove PMI and cease collecting premium payments from borrowers under certain circumstances, in some instances upon a borrower's request and in others automatically. Defendant failed to cancel as requested by the Plaintiff aka as borrowers, or automatically terminate PMI, as required under the HPA, for Plaintiff Pursuant to the HPA, there are two separate circumstances under which servicers must remove PMI: (1) Automatic Termination. Servicers must

automatically terminate a borrower's PMI on the loan's

predetermined "termination date," which is the date when the

principal balance of the mortgage is first scheduled to reach 78

percent loan-to-value ("LTV"), or, if the borrower is not current

as of the termination date, the first day of the first month after

the borrower becomes current on the loan; and (2) Borrower-

Requested Cancellation. Servicers must cancel a borrower's PMI

upon receipt of borrower's written request on the loan's

"cancellation date," which is the date when the LTV is scheduled

to reach 80% of the original value of the property, or the date on

which the principal balance of the loan reaches 80% of the

original value of the property based on actual payments.

Defendant operated under an erroneous reading of the HPA's

cancellation requirements.

26. When Plaintiff requested my PMI be removed from

my mortgage, The Defendants (Mortgagee), The Money Store,

told me it could never be removed and that this was the law.

However, most lenders required borrowers to reach an 80 percent LTV threshold and the HPA requires LTV Threshold of 80 percent, before it would honor a borrower's request for cancellation of PMI.

27.Because Defendant operated under an erroneous understanding of the HPA, it also provided Plaintiff with incorrect information in response to inquiries regarding my ability to have my PMI canceled by telling me that it could never be removed.

28.Defendants failed to accurately determine borrowers' termination dates, and as a result, Defendant failed to automatically terminate PMI on time for this Plaintiff.

29. In failing to cancel and terminate PMI in compliance with the HPA, Defendant also continued to collect, and failed to return, PMI payments notwithstanding the HPA's requirements that it do so. VIOLATIONS OF THE CFPA 57. Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531

and 5536(a)(1)(B), prohibit covered persons from engaging "in any unfair, deceptive, or abusive act or practice."

30. An act or practice is unfair under the CFPA if "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c). 59.

## COUNT V

## UNFAIR DECREASE TO PERMANENT MONTHLY PAYMENTS

31. The Plaintiff incorporates by reference the allegations of Paragraphs 1 to 30.

32. An act or practice is unfair under the CFPA if "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. §§ 5531(c).

18

33. The Defendant are taking late fees out of my mortgage payments without my consent and thus decreasing the amount of my monthly mortgage payments and decreasing the credit to my account. They have never responded to my attorney or my request about late fees.

34. Defendant unilaterally increased borrowers' permanent monthly payments by taking late fees out of his mortgage payments without his permission on a unilateral basis. I sent in a Mortgage payment and they deducted $66.53 cents out that payment without my consent on two occasions.

35. There is no countervailing benefit to competition or consumers from Defendant's unilateral increases

36. As a Result of the Defendant 's violation of the above Civil Rights, Plaintiff was harmed in the following way:

COUNT VI

42 U.S.C.A. § 1981

DISCRIMINATION UNDER 42 U.S.C.A. § 1981

19

Plaintiffs repeat and re-allege paragraphs 1 – 36 as though fully set forth herein.

37. On May 25, 2021 and at all times relevant to the events described above, the Defendants were the employees of The Money Source and or representatives of The Money Source and /or the employees of The Money Source and Servbank.

38. The discriminatory practices described above were carried out at the direction of and with the consent, encouragement, knowledge, and ratification of the Defendants at the Money Source and Servbank under Defendants and The Money Source's And or Servbank's authority, control, and supervision; and or within the scope of employee's employment.

39. Defendants, The Money Source and/or representatives of The Money Source and /or the employees of The Money Source and Servbank are liable for the unlawful acts of its employees, agents, and/or representatives directly and/or under the doctrine of respondent superior. Defendant The Money Source engaged in intentional discrimination based on Plaintiff's race, color, religion, ancestry, and/or national origin and caused

20

Plaintiffs to suffer deprivation of his right to make and enforce

contracts by not treat him as similarly situated white mortgagors.

40.Defendants, The Money Source and Servbank

engaged in racial discrimination against Plaintiff based on their

race, color, or national origin and caused Plaintiff to be deprived

of his rights.

41. Plaintiff was improperly charged late fees, multiple

checks cashed in one month after promising not to cash both

check and causing Plaintiff checking account to overdraw and

incur bank fees because the Defendant didn't keep their word.

42.At all times relevant, the officers who committed the

aforesaid unlawful acts were agents and/or employees of The

Money Source and Servbank, acting within their scope and

authority, under the authority of the Defendant the Money

Source.

43. Plaintiff s were denied the Equal Rights afforded to

them pursuant to 42 U.S.C.A. § 1981. Equal rights under the law

to subject nonwhites to late fees, bank fees, and depletion of Plaintiff's bank account of funds by taking two payments of $2600 instead of once on a monthly basis and twice in one year the Money Source did this to Plaintiff and refusing to cancel PMI Payments while granting favorable terms and treatment for Whites.

The law states in pertinent part :

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"Make and enforce contracts" defined

22

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

44. The aforementioned acts of the Defendants denied Plaintiffs these rights and deprived them of the ability to contract as other races are allowed to contract when Plaintiff was forced to pay late fees, had two payments of $2600 taken out of his account twice in one month on two separate occasion in one year and refused to even consider cancelling PMI payments. Similarly

situated Whites are not subjected to this same treatment by the

Defendant, The Money Source.

## COUNT VII

## BREACH OF IMPLIED COVENANT GOOD FAITH

## AND FAIR DEALING AND FAILURE TO CANCEL PMI

46. Plaintiff realleges and incorporates by reference all of

the paragraphs 1- 45 above.

47. Under the HPA, servicers are required, under certain

conditions, to cancel a requirement for private mortgage insurance

on a specific date called the "cancellation date." 12 U.S.C. § 4902(a).

48. The "cancellation date," as defined by HPA, 12 U.S.C.

§ 4901(2), means: (A) With respect to a fixed rate mortgage, at the

option of the mortgagor, the date on which the principal balance of

the mortgage: (i) Based solely on the amortization schedule then in

effect for that mortgage, and irrespective of the outstanding balance

for that mortgage on that date, is first scheduled to reach 80 percent

of the original value of the property securing the loan; or (ii) Based

24

solely on actual payments, reaches 80 percent of the original value of

the property securing the loan; and (B) With respect to an

adjustable rate mortgage, at the option of the mortgagor, the date

on which the principal balance of the mortgage: (i) Based solely on

the amortization schedule then in effect for that mortgage, and

irrespective of the outstanding balance for that mortgage on that

date, is first scheduled to reach 80 percent of the original value of

the property securing the loan; or (ii) Based solely on actual

payments, first reaches 80 percent of the original value of the

property securing the loan.

     49.In numerous instances, Defendant failed to cancel the

private mortgage insurance of borrowers who had met the HPA's

requirements and had requested cancellation on the borrowers'

cancellation date, in violation of 12 U.S.C. § 4902(a).

     50. Defendant's failure to cancel private mortgage

insurance as required violated 12 U.S.C. § 4902(a).

25

51. These violations also constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT VIII

## FAILURE TO TERMINATE PMI AUTOMATICALLY.

52. Under the HPA, servicers are required to automatically terminate a borrower's private mortgage insurance when the borrower's loan reaches its "termination date." 12 U.S.C. § 4902(b).

53. The "termination date," as defined by the HPA, 12 U.S.C. § 4901(18), means: (A) With respect to a fixed rate mortgage, the date on which the principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan; and (B) With respect to an adjustable rate mortgage, the date on which the principal balance of

26

the mortgage, based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.

54. The Plaintiff incorporates by reference the allegations of Paragraphs 1 to 53.

55. In numerous instances between January 1, 2022 and May 1, 2023, Defendant failed to maintain accurate PMI termination dates for borrowers. As a result, Defendant failed to terminate those borrowers' PMI premiums on their scheduled termination date, overcharging this Plaintiff for unnecessary PMI premiums in violation of 12 U.S.C. § 4902(b).

56. Defendant's failure to terminate private mortgage insurance as required violated 12 U.S.C. § 4902(b).

57. These violations also constitute violations of the CFPA. 12 U.S.C. § 5536(a)(1)(A).  Prayer for Relief The Plaintiff, pursuant to Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564

27

and 5565, and the Court's own equitable powers, requests that the Court: 1. Permanently enjoin Defendant from committing future violations of the CFPA, RESPA, and HPA, and enter such other injunctive relief as appropriate; 2. Award such relief as the Court finds necessary to redress injury to Plaintiff , including, but not limited to, rescission or reformation of contracts; refund of moneys; restitution; and payment of damages or other monetary relief; 3. Award such relief as the Court finds necessary to disgorge Defendant of unlawful gains; 4. Award civil money penalties against the Defendant; 5. Award costs against the Defendant; and 6. Award additional relief as the Court may deem just and proper

## COUNT IX

### FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE AS TO BANK EMPLOYEES

58. Plaintiffs repeat and re-allege paragraphs 1 through 57 as though fully set forth herein.

28

59.Defendant the Money Source is responsible for the training, instruction, supervision, and discipline of The Money Source agents, employees, and/or representatives who were at all times, relevant acting within the scope of their employment.

60. Upon information and belief, Defendant the Money Source provided grossly inadequate training, instruction, supervision, and discipline to Defendant's agents, employees, and/or representatives.

61.Defendant The Money Source should have known and trained and instructed its employees, agents, and/or representatives to be aware that Defendants, The Money Source and/or representatives of The Money Source aka Servbank and/or the employees of Money Source Knew or should have known that their employees were double dipping into Plaintiff Bank account for mortgage payments and refusing to remove PMI fees and charging unnecessary late fees for timely payments

29

and acknowledge they denied Plaintiff these contractual rights because of his race, ancestry and ethnicity.

62. The Money Source inadequate training, supervision, and discipline of its    employees, agents, and/or representatives subjected Plaintiffs to intentional discrimination on the basis of their race, ethnicity, and/or national origin.

63. Defendant the Money Source employees, agents and/or representatives' acts of intentional discrimination caused Plaintiffs to be denied the right to freely contract in good faith with the Money Source, even though Whites are allowed to deal with the Money Source and Servbank in good faith, but Plaintiff was denied the right to these same services

64. As a consequence of Defendant the Money Source failure to train, supervise, and discipline its employees, agents, and/or representatives, Plaintiffs suffered and will continue to suffer humiliation, anxiety to bank, shame, despair, embarrassment, depression, mental pain, anguish, injury to their

reputations, and economic losses, all to Plaintiff's damage in an

amount to be proven at time of trial.

## COUNT X

## UNRUH CIVIL RIGHTS ACT

65. Plaintiffs repeat and re-allege paragraphs 1 through 64 as

though fully set forth herein.

66 By their refusal to provide service to plaintiffs on the basis of

plaintiff's race, have violated plaintiff's, right to be free from

discrimination as guaranteed by California Civ. Code 51. As a direct

and proximate result of conduct of defendants, and each of them,

plaintiffs have suffered and will continue to suffer humiliation,

mental anguish.

67. Defendants' violation of plaintiff's right as guaranteed

by Civ. Code 51 entitles plaintiffs to receive compensatory damages,

attorney's fees, and injunctive relief, all of which are provided for in

Civ. Code 52 and are prayed for below.

31

68. In doing the acts alleged in this complaint, defendants knew or should have known or should have known that their actions were likely to injure plaintiff. Plaintiff is informed and believes, and on that basis alleges, that defendants intended to cause injury to and acted with a willful and conscious disregard of plaintiff's rights as secured by Civ. Code_ 51, thereby entitling plaintiffs to recover treble damages, or a minimum of $4,000, pursuant to Civ Code 52 subd. (a).

69. Defendant is a business establishment within the meaning of the Unruh Civil Rights act, e.g. At all times herein mentioned, defendant   The Money Source was the owner or operator of a business establishment engaged in the business of banking commonly known and designated as owner of The Money Source are doing Business in Moreno Valley, California and have made made minimum contact with the State of California and are doing business in Riverside, California even though The Money

32

Source and /or Servbank are situated at Suite 200, 3138 East Elwood St. Phoenix, Arizona 85034.

70.The above Civil Rights were violated by the above-named Defendants.

71.As a Result of the Defendants violation of the above Civil Rights, Plaintiff was harmed in the following way: Plaintiff continues to suffer humiliation, mental anguish and loss of funds.

COUNT XI

VIOLATION OF CONSUMER FINANCIAL PROTECTION ACT, REAL ESTATE SETTLEMENT PROCEDURE ACT AND REGULATION X AND HOME OWNERS PROTECTION ACT

72.Plaintiff repeat and re-allege paragraphs 1 through 71 as though fully set forth herein.

73.Sections 1031 and 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536; (2) Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12

33

U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. § 1024 et seq. ("RESPA Mortgage Servicing Rule"); and (3) Sections 4902(a) and (b) of the Homeowners Protection Act of 1998, 12 U.S.C. §§ 4902(a) and 4902(b) ("HPA").

74. Hudena James brings this action against Defendant under:

Sections 1031 and 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536;

Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. § 1024 et seq. ("RESPA Mortgage Servicing Rule"); and (3) Sections 4902(a) and (b) of the Homeowners Protection Act of 1998, 12 U.S.C. §§ 4902(a) and 4902(b) ("HPA").

75. Hudena James brings this action to obtain injunctive relief and other equitable relief to address and remedy Defendant's unlawful conduct; to require Defendant to pay redress to the

34

injured Plaintiff; and to impose civil money penalties against Defendants.

76. The CFPA is a federal consumer financial law. 12 U.S.C. § 5481(14). Under Sections 1031 and 1036 of the CFPA, it is unlawful for any covered person to commit or engage in any unfair, deceptive, or abusive acts or practices. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). 8. RESPA and the HPA are federal consumer financial laws. 12 U.S.C. § 5481(12), (14). Under Section 1036 of the CFPA, it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with federal consumer financial law, or otherwise commit any act or omission in violation of a federal consumer financial law." 12 U.S.C 5536(a)(1)(A). Violations of RESPA and the HPA are therefore violations of the CFPA.

77. Defendant. Money Source is an Arizona company with its principal place of business is located at Suite 200, 3138 East

35

Elwood St. Phoenix, Arizona 85034 is the current name under which

Money Source does business. The Money Source engages in

mortgage servicing by, among other things, processing borrower

payments, administering loss mitigation processes, and managing

foreclosures. At all times relevant to this complaint, Money Source

has done business in this District and throughout the United States.

78 Defendant is a "covered person" pursuant to 12 U.S.C. § 5481(6)
because it offers and provides consumer financial services, which
includes "extending credit and servicing loans" and "collecting
debt" related to such loans, as defined under the CFPA, 12 U.S.C. §
5481(15)(A)(I) and (x).

79. For the purpose of RESPA, a servicer is a person "responsible
for servicing of a loan." 12 U.S.C. § 2605(i)(2). Under RESPA,
"servicing" means "receiving any scheduled periodic payments
from a borrower pursuant to the terms of any loan…and making
the payments of principal and interest and such other payments
with respect to the amounts received from the borrower as may be
required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

80. Defendant is subject to RESPA as a mortgage servicer of
federally related mortgage loans. in monthly payments.

## COUNT XII
## DECEPTIVE REPRESENTATION OF MORTGAGE
## PAYMENTS

81. The Plaintiff incorporates by reference the allegations of Paragraphs 1 to 80.

82. A representation, omission or practice is deceptive under the CFPA when it is likely to deceive a consumer acting reasonably under the circumstances, and where the representation, omission or practice is material.

83. In numerous instances, Defendant told Plaintiff it would not remove his PMI payment on May 25, 2021, nor respond to his request about double dipping into his Bank account twice in two separate months, January and November of 2022 of the same year, or imposing unnecessary late fees. Despite receiving letters from Plaintiff's attorneys, and Plaintiff, himself, Defendants did nothing in response to these letters except to refuse to cancel PMI payments or respond to the numerous letters. They failed to give Plaintiffs a modicum of respect in the contractual relationship and treated him differently because of his race and color.

84. Defendant's promises not to remove PMI and not to cash a second check in one month (they cashed two checks in one month on two separate occasions in one year) was likely to mislead Plaintiff, who was entitled to reasonably rely on their Defendant telephone representations.

85. Defendant's explicit representations were material to borrowers' financial decision-making with regard to his mortgage payment.

86. Defendant's representations were deceptive in violation of Sections 1031 and 1036 of the CFPA. 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). Plaintiff justifiably relied on this misrepresentation

37

and more money was taken out of his account for PMI payments that actually could have been used to reduce his mortgage.

87. A representation, omission or practice is deceptive under the CFPA when it is likely to deceive a consumer acting reasonably under the circumstances, and where the representation, omission or practice is material.

88. In numerous instances Defendants represented to Plaintiff that they could never cancel his premiums while cancelling others.

89. In fact, the HPA required otherwise eligible borrowers to reach 80% LTV on their mortgages in order to request cancellation of their PMI.

90. Plaintiff was entitled to reasonably rely on the express representations of their mortgage servicer, Defendant, The Money Source and/or Servbank.

91. Defendant's statements were material to Borrowers' decisions about whether to seek cancellation of their PMI.

92. Defendant's false statements regarding borrowers' obligations under the HPA were deceptive in violation of Sections 1031 and 1036 of the CFPA. 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). VIOLATIONS OF RESPA

93. RESPA and its implementing regulation, Regulation X, pertain to certain acts and practices related to "federally related mortgage loans," including servicer requirements related to notice of error and complaint resolution.

38

94. The loans impacted by the allegations herein are federally related mortgage loans.

## COUNT XIII

## BREACH OF FIDUCIARY DUTY OF TRUST

95. The Plaintiff incorporates by reference the allegations of Paragraphs 1 to 94.

96. The Plaintiff and Defendant established a contractual relationship for a mortgage on or about May 25, 2016. This fiduciary relationship required the utmost care between the parties and it is a promise not to hinder or hurt or damage the other party in the relationship. On countless occasions, as stated above, Defendants have breached this fiduciary relationship. The Plaintiff has loss $211.58 each month that could of went to reducing his mortgage and he has incurred unnecessary bank fees because the defendants have cashed two checks in one month on two separate occasions in one year and Plaintiff has also incurred unnecessary late fees as well as anguish and disgust from being treated differently due to his racial heritage.

### XIV. REQUEST FOR RELIEF:

WHEREFORE, Plaintiffs pray judgment against

Defendants, and each of them, as follows:

For general damages in the sum of $ One Million Dollars.

For statutory damages in the sum of $ 4,000

39

For attorney's fees pursuant to Civil Code Section 52:

For exemplary and punitive damages;

For costs of suit herein incurred; and

For such other and further relief as the court my deem proper.

Jury Trial Demanded: Yes

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


May 12, 2023                         *Hudena James*

                                    Hudena James (In Pro Per)

40

# VERIFICATION

I, Hudena James, am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and, as to those matters, I believe to be true.

Respectfully submitted

May 12, 2023

_Hudena James_

Hudena James (In Pro Per)

# PARKER · STANBURY LLP

ATTORNEYS AT LAW

444 SOUTH FLOWER STREET

NINETEENTH FLOOR

LOS ANGELES, CA 90071-2901

TELEPHONE (213) 622-5124

FAX (213) 622-4858

E-MAIL: LA@PARKSTAN.COM

DOUGLASS H. MORI
JOHN D. BARRETT, JR. *
J. LUIS GARCIA †
DAVID E. COWAN
GEORGE A. HUNLOCK
MATTHEW W. DAVIS
REYNALDO C. SANTOS
B. PETER LEE
MARCUS BASTIDA
ROSEMARIE MERRILL

DAVID C. LANE
DANA C. GIOVINE
MATHEW L. MAY
ALEX L. SHIA
JEFF H. GREEN
GLENN M. HABAS
GEORGANN CARMAN
RICARDO A. MERCADO
J. MARTIN LATHROP
JAMES L. WOLFSEN

KELLY A. SHERIDAN
HANS W. CHEN
ERIK PRIEDKALNS
AARON G. FREEMAN
GREGORY T. FONG
JOSEPH R. SERPICO
ROCCO A. PAPALIA
MELANIE M. BUTLER
TAMARA C. HARRIS
CLAUDIA M. PALENCIA

SARA Y. SHOWKATIAN
KRISTOFFER M. GARRISON
SUZANNE K. GOLDEN
IAN G. STERLING
MICHAEL COMPTON
ELIZABETH R. SOUTHERLAND
CARL H. STARRETT II

* ASSOCIATE IN AMERICAN BOARD OF TRIAL ADVOCATES
† MEMBER OF AMERICAN BOARD OF TRIAL ADVOCATES

HARRY D. PARKER (1891-1976)
RAYMOND G. STANBURY (1904-1968)

May 25, 2021

Darius Mirshahzadeh
THE MONEY SOURCE INC.
3138 E. Elwood Street
Phoenix, AZ 85034

Dear Mr. Mirshahzadeh:     Re:     Account No. 0031626351
<u>Our File Number: CA-49C-9B3</u>

  I am writing on behalf of Hudena and Jacqueline James. They own the property located at 23729 Bouquet Canyon Place, Moreno Valley, CA 92557. They are requesting removal of their mortgage insurance.

  According to the documents I reviewed, the James' loan balances is just over $308,000. Redfin shows the property value to be over $516,000. Based on these numbers, it appears that the loan-to-value ratio is under 60%. This is far below the 80% threshold normally required for removal of mortgage insurance.

  Please investigate this matter, notify Mr. and Mrs. James of your decision and copy me with your reply.

    Very truly yours,

    PARKER · STANBURY LLP

  By

    Carl H. Starrett II

cc: Hudena James Sr

EXHIBIT A

December 31, 2022

Dear    Money Source:
          Re: Acct

I    mailed    my    payment
on November 1st, 2022. You
did    not    cash    it    until
Nov 23, 2022.

You    charge    me    a    late
fee    of    $66    for    untimely
payment.
Please    "reverse"    the    fee
because    I    sent    you
payment    in    a    timely
fashion. From Calif to Texas
shouldn't    take    23 days.
charging    me    a    late    fee
in    this    situation    is    a
breach    of    the    implied
covenant    of    good    faith    and
fair    dealing.    This is the second
time this    has    I await    your
occurred.                         response,

Exhibit B                    Hudena James
                              xxx-xx-6008

# PARKER · STANBURY LLP

### ATTORNEYS AT LAW

444 SOUTH FLOWER STREET

NINETEENTH FLOOR

LOS ANGELES, CA 90071-2901

TELEPHONE (213) 622-5124

FAX (213) 622-4858

E-MAIL: LA@PARKSTAN.COM

DOUGLASS H. MORI
JOHN D. BARRETT, JR. *
J. LUIS GARCIA †
DAVID E. COWAN
GEORGE A. HUNLOCK
RICARDO A. MERCADO
MATTHEW W. DAVIS
REYNALDO C. SANTOS
B. PETER LEE
MARCUS BASTIDA
ROSEMARIE MERRILL
DAVID C. LANE
MATHEW L. MAY
ALEX L. SHIA
GLENN M. HABAS

GEORGANN CARMAN
JAMES L. WOLFSEN
KELLY A. SHERIDAN
HANS W. CHEN
AARON U. FREEMAN
GREGORY T. FONG
JOSEPH R. SERPICO
ROCCO A. PAPALIA
MELANIE M. BUTLER
CLAUDIA M. PALENCIA
KRISTOFFER M. GARRISON
MICHAEL COMPTON
ELIZABETH SOUTHERLAND
CARL H. STARRETT II
SHARIE ZAHAB

ALEXIS MOORE
LINDA IRELAND
M. JOLEENE FLORES
BRIDGET ESQUIBIAS
JENNIFER BAEZ-SILVA
GABRIELA CARRILLO

OF COUNSEL:

SANAM NAVAB
BRADLEY J. SPARKS
MICHAEL SALANICK
MEGAN E. GALLACHER
MARYAN ABRISHAMCAR
LARS F. KUEHNER

PATRICIA MILLER
WILLIAM HOPKINS
KYLE C. BENKIE
SALPY KABAKLIAN-SLENTZ
FELIX P. MONTERO
LINDA H. MUCHAMEL
LAURIE HOWELL
ANTHONY F. SGHERZII

\* ASSOCIATE IN AMERICAN BOARD OF TRIAL ADVOCATES
† MEMBER OF AMERICAN BOARD OF TRIAL ADVOCATES

HARRY D. PARKER (1891-1976)
RAYMOND G. STANBURY (1904-1966)

December 8, 2022

The Money Source
Attn: Darius Mirshahzadeh, CEO
500 South Broad Street, Suite 100A
Meriden, CT  06450

Dear Sir/Madam:                    Re:  Hudena James
                                        Demand for Funds
                                        Account No.:  0031626351
                                        Our File No.:  CA-ANP-YVS

Mr. and Mrs. Hudena James have recently consulted with our office in order to assist them in attempting to resolve an issue involving your organization.

Mr. and Mrs. James have informed us that they have been paying their mortgage since 2016 to The Money Source under account # 0031626351.  They mailed their Mortgage check on November 1, 2022, as usual.  The mortgage company called them on November 17, 2022, and said they had not received the November 1, 2022, payment.  Mr. James explained to The Money Source he was fearful of doing a check over the phone because the last time this happened, they double-dipped into their checking account in one month by taking payment over the phone as well as cashing the mailed check.  The lady explained that she understood his concerns.

When he called back on November 22, 2022, to see whether the check had finally been received, they told him that it hadn't.  Mr. James told Dana, the company representative for The Money Source, that he would go ahead and do a telephone check on November 22, 2022, in order to avoid being reported to a credit bureau as being late and she assured him that after thirty days he would be reported as late.  Mr. James asked her to please notate the file so that the first check would not arrive and deplete his account.  She said she would notate his file.  Mr. James did this telephone check over the phone with the mortgage company representative "Dana" and she agreed to take the missing payment over the phone and notated the file "not" to cash the November 1, 2022 mailed check if it should arrive.

On November 29, 2022, the mailed mortgage payment for $2,600 came in and thus depleted Mr. and Mrs. James' account to the sum of a *minus* $696.

In short, Mr. and Mrs. James paid the November mortgage payment over the phone on November 22, 2022, and again on November 29, 2022, in the amount of a duplicative $2600.

Exhibit C

December 8, 2022
Page 2

Mr. and Mrs. James now request that the Mortgage Company, The Money Source, because of their error, cover all bounced check fees that occurred because of their negligence in cashing two checks in one month as well as any reasonable and consequential fees such as four bounced check bank fees to date of $120 ($30 x 4 checks) and the fees associated with this blunder that they will have to pay for. Those bounced checks to the creditors total approximately $140.

Please consider this letter a formal demand on behalf of Mr. and Mrs. James that you immediately investigate the facts and circumstances concerning this matter and agree to provide them with an appropriate response to return the funds taken.

Mr. and Mrs. James have been made fully aware of their legal rights, your obligations and potential liabilities under law and they have expressed an intention to pursue any and all available legal remedies against you should this letter fail to generate an appropriate response.

Please respond to them at the email provided and/or address below:

    Hudena James
    hudena@aol.com

Your prompt attention to this matter is greatly appreciated.

        Very truly yours,

        PARKER · STANBURY LLP

        By
           MATHEW L. MAY, ESQ.

cc:    Mr. and Mrs. Hudena James (via e-mail)